UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON BEASLEY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CHRISTIAN PFEIFFER, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-07149-EMC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Docket No. 1 |

## I.    INTRODUCTION

Petitioner Jason Beasley was convicted by a jury, in state court, of kidnapping to commit a sex crime, torture, attempted pandering by procuring, and attempted human trafficking for commercial sex. *See* Cal. Pen. Code §§ 209(b)(1), 206, 266i(a)(1), 236.1(b). The state trial court sentenced him to fifteen years, 8 months to life. Currently pending before the Court is Mr. Beasley's petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254. In the petition, Mr. Beasley seeks to have his conviction vacated. According to Mr. Beasley, his constitutional rights were violated, primarily as a result of instructional error and insufficiency of evidence.

## II.    FACTUAL & PROCEDURAL BACKGROUND

Mr. Beasley – along with two other individuals, Paul Booker and Ruben Mitchell – was convicted of a crime that took place in June 2013. The testimony at his trial has largely been summarized by the California appellate court in its decision *People v. Mitchell*, No. A150156, 2019 Cal. App. Unpub. LEXIS 3356 (Cal. Ct. App. May 14, 2019), *as modified by* 2019 Cal. App. Unpub. LEXIS 4010 (June 11, 2019). To wit: at the relevant time, Mr. Beasley was a pimp in

1  Oakland and a rap artist. Mr. Booker was also a pimp in Oakland. Mr. Mitchell was a rap artist
2  and had appeared in a music video with Mr. Beasley. Jane Doe was a seventeen-year-old
3  prostitute in Oakland. She did not have a pimp but knew of pimps in the area, including Mr.
4  Beasley and Mr. Booker. Shortly before the crime, she had refused to prostitute for Mr. Booker.

5        On or about June 2, 2013, Ms. Doe and Mr. Beasley hung out and had sex. The following
6  day, Mr. Beasley was going to drive Ms. Doe out of town, where she would work as a prostitute.

7        At some point during the car ride, Mr. Beasley – with Ms. Doe in the car – picked up a
8  woman that he knew. Mr. Beasley then passed near a corner where Mr. Booker, Mr. Mitchell, and
9  several other men were standing. Mr. Booker pointed at Ms. Doe and said, "'There goes that
10 bitch.'" Mr. Booker and the other men got into their car. It appears that Mr. Beasley then picked
11 up a child from school, and Ms. Doe, feeling something was not right, told Mr. Beasley that she
12 did not want to go out of town anymore and wanted to get dropped off.

13       Ms. Doe was not dropped off. Instead, as Mr. Beasley was driving, Mr. Booker's car came
14 up to them and Mr. Beasley stopped his car. Mr. Booker, Mr. Mitchell, and the other men got out
15 of their car and approached Mr. Beasley's car. Mr. Booker had a gun. He and the others dragged
16 Ms. Doe out of Mr. Beasley's car. Although Ms. Doe screamed for help, Mr. Beasley did not
17 assist her. Ms. Doe felt that Mr. Beasley had set her up.

18       Mr. Booker beat Ms. Doe with his gun, and he and the other men threw her in the trunk of
19 their car. They took her to Mr. Booker's apartment where he dragged her inside.

20       At the apartment, there were many people – including Mr. Beasley himself. Ms. Doe was
21 beaten up again at the apartment. As she was beaten, the men told her, "You gotta make money
22 for us." At one point, she blacked out. When she awoke, she found that her neck, arms, and legs
23 were bound with duct tape. Mr. Booker and another man began to cut Ms. Doe using a machete.
24 Mr. Booker also used a gun to threaten Ms. Doe and said that he would kill Ms. Doe if she did not
25 make him money. Mr. Beasley was there and watched what took place. He did not help Ms. Doe.

26       Ms. Doe drifted in and out of consciousness. When she awoke, she was in a bedroom.
27 She managed to escape by jumping out of a window. A man eventually assisted her and called the
28 police.

1     Although, initially, Ms. Doe may not have thought that Mr. Beasley was involved in the

2 crime, she later came to believe that he had set her up.

3     Shortly before Mr. Beasley's trial, Mr. Beasley asked Ms. Doe: "Please don't snitch on me.

4 Don't tell on me."

5     After the evidence was submitted to the jury, it did not convict Mr. Beasley for all of the

6 crimes with which he had been charged but did convict him of the following:  kidnapping to

7 commit a sex crime, torture, attempted pandering by procuring, and attempted human trafficking

8 for commercial sex.

9     Mr. Beasley appealed his convictions, but the state appellate court affirmed (although it did

10 remand his case to the trial court for a recalculation of his presentence and conduct credits and

11 amendment of the abstract of judgment).  Mr. Beasley then petitioned the California Supreme

12 Court for review, but review was denied in August 2019.  Subsequently, Mr. Beasley filed his

13 habeas petition with this Court.

## III.     DISCUSSION

### A.     Legal Standard

Mr. Beasley's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, habeas relief may be granted if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States" or resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.

3

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" *Id.* at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04; *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). "When there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst*, 501 U.S. at 803.

B. <u>Aiding and Abetting Jury Instruction</u>

In his first habeas claim, Mr. Beasley asserts that his right to due process and his right to a jury trial were violated because of an instructional error on aiding and abetting. The trial court gave the CALCRIM 401 instruction. The relevant part of the instruction is as follows:

> To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:
>
> 1. The perpetrator committed the crime;
>
> 2. The defendant knew that the perpetrator intended to commit the crime;
>
> 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; AND
>
> 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.
>
> Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, **or** instigate the perpetrator's commission of that crime.

CALCRIM 401 (emphasis added). According to Mr. Beasley, "[t]he use of 'or' in the sixth paragraph erroneously permitted the jury to convict by finding that [he] aided 'or' abetted" – *i.e.*, not that he aided *and* abetted. Pet. at 3. Mr. Beasley maintains that "aid" and "abet" have different meanings; "aid" means to assist while "abet" means to incite or encourage. Thus, under

4

1 CALCRIM 401, Mr. Beasley contends, he "could have been convicted if the jury simply found
2 that he assisted the crimes without also finding that he encouraged or instigated the crimes." Pet.
3 at 4.

4 In response, the state makes two arguments: (1) that Mr. Beasley is barred from raising the
5 claim because it has been procedurally defaulted (*i.e.*, he failed to object to the instruction at trial),
6 *see Mitchell*, 2019 Cal. App. Unpub. LEXIS 3356, at *19 (holding that the "claim is forfeited
7 because neither Beasley nor Mitchell objected to the instruction"), and (2) on the merits, "the court
8 of appeal determined that the instruction given, CALCRIM 401, was a correct statement of
9 California law," and this Court "is bound by the state appellate court's interpretation of the state
10 law issue." Resp. at 13. The appellate court relied on the analysis in *People v. Campbell*, 25 Cal.
11 App. 4th 402 (1994), where the defendant made the same argument that, in order for a jury to
12 convict someone as an aider and abettor, "the jury must find that he or she both assisted *and*
13 encouraged the actual perpetrator.'" *Id.* at 410. The *Campbell* court held that "the standard
14 instruction properly defines the term 'aid and abet.'" *Id.* at 411. It explained that, "despite the
15 simple logic of [the defendant's] claim, he cites, and our research has revealed, no case holding, or
16 even suggesting, that 'aid and abet' requires separate findings concerning two distinct types of
17 *acts* (assisting and encouraging) before a jury may properly convict a defendant as an aider and
18 abettor." *Id.* (emphasis in original). The *Campbell* court went on to note that "'aid and abet' is a
19 term of art" which courts have construed to signify a difference in mental state, as opposed to a
20 difference in conduct. *Id.* at 412-13. While "aid" does not imply guilty knowledge, "abet" does:
21 "'the definition of the word "abet" includes knowledge of the wrongful purpose of the perpetrator
22 and counsel and encouragement in the crime.'" *Id.* at 413. In short, "the term 'abet' in the phrase
23 'aid and abet' serves to supply the mental element necessary to justify the imposition of criminal
24 liability." *Id.*

25 The state adds that, even if there were a cognizable federal habeas claim, Mr. Beasley
26 would be entitled to relief only if the instructional error "'so infected the entire trial that the
27 resulting conviction violates due process.'" Resp. at 13.

28 For purposes of the pending petition, the Court need not address the alleged procedural

5

default. As the state argues, on the merits, Mr. Beasley's position fails because "a challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings." *James v. Ramirez-Palmer*, No. C 00-4661 SI (pr), 2002 U.S. Dist. LEXIS 12092, at *32-34 (N.D. Cal. June 28, 2002) (holding that petitioner's due process rights were not violated by willfulness instruction given because "[t]he instruction correctly described the intent element of the crimes" under California law; "[t]his court will not revisit that determination of state law by the state appellate court"); *see also Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (stating that "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief"); *Stanton v. Benzler*, 146 F.3d 726, 728 (9th Cir. 1998) (holding that state law determination that arsenic trioxide is a poison as a matter of law – and not an element of the offense for jury determination – "is not open to challenge on federal habeas review"). The Court acknowledges (as did the state) that a claim of instructional error may be a basis for habeas relief but that is only where the error "'by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72. Mr. Beasley has not made such a claim here but rather simply contends that the "instruction was allegedly incorrect under state law [which] is not a basis for habeas relief." *Id.* at 71-72.

C.  Insufficient Evidence on Aiding and Abetting

In his second habeas claim, Mr. Beasley contends that, even if there were no instructional error regarding aiding and abetting, there was insufficient evidence to convict him of aiding and abetting on any of the crimes for which he was convicted – but in particular, the crime of torture – and therefore his right to due process was violated.

The last reasoned decision on this issue was the decision of the state appellate court on direct appeal. The state appellate court held first that this argument had been "forfeited because Beasley has not identified the convictions supposedly lacking in evidentiary support." *Mitchell*, 2019 Cal. App. Unpub. LEXIS 3356, at *8. In a footnote, the court added that, "[o]n the last page of his 82-page opening brief, Beasley states he 'joins in the arguments raised in Booker's and Mitchell's briefs to the extent applicable,'" but it "reject[ed] this perfunctory joinder argument because Booker and Mitchell's opening briefs total 150 pages and [they] raise[d] numerous claims

of error from all stages of the proceedings." *Id.* at *8 n.4.

The state appellate court went on, however, to address Mr. Beasley's argument on the merits. The court took note of factors that may be considered in determining whether a person has aided and abetted a crime, such as "presence at the scene of the crime, companionship, and conduct before and after the offense." *Id.* (internal quotation marks omitted). Taking into account these factors, the court found that there was "ample evidence" to support the conviction for kidnapping.

> Doe testified Beasley set her up to be kidnapped. He ignored Doe's request to be taken home and instead drove her to a quiet neighborhood. Beasley allowed Booker and Mitchell to drag Doe out of the car and watched as she was thrown in the trunk of Booker's car. In Booker's apartment, Beasley declined to assist Doe as she was beaten and tortured. From this evidence, the jury could easily conclude Beasley – himself a pimp – was part of a plan to kidnap Doe, brutalize her, and force her to prostitute herself.

*Id.* at *9, as modified by 2019 Cal. App. Unpub. LEXIS 4010.

The state appellate court also found sufficient evidence to support the conviction for torture. It explained that "Booker's brutal act of binding Doe with duct tape, blindfolding her, and cutting her with a machete constitute torture" and that there was sufficient evidence that Mr. Beasley aided and abetted Mr. Booker's torture.

> Doe testified Beasley set up the kidnapping, supporting an inference that Beasley knew of Booker's sadistic purpose and intended to assist Booker in carrying out that purpose. There is no evidence Beasley was at the kidnapping by accident, that he was unaware of Booker's criminal intent, or that he lacked knowledge Doe was being brutalized by Booker. "[T]he evidence, in our view, reasonably indicates that [Beasley] played an affirmative supportive role in the [torture] and was not simply an innocent, passive, and unwitting bystander."

*Id.* at *10-11.

Finally, the state appellate court stated that, based on the same evidence, there was also "substantial evidence" to support the convictions for attempted pandering by procuring and human trafficking for commercial sex. *Id.* at *11.

As an initial matter, the state argues that the Court need not address the merits of Mr. Beasley's due process claim because Mr. Beasley procedurally defaulted on the claim. The state's

7

argument is founded on the state appellate court's statement that Mr. Beasley had forfeited the claim because he had failed to "identif[y] the convictions supposedly lacking in evidentiary support." *Mitchell*, 2019 Cal. App. Unspub. LEXIS 3356, at *8. The Court agrees with Mr. Beasley that the state appellate court's statement is not supported by the record evidence. *See Johnson v. Thurmer*, 624 F.3d 786, 789 (7th Cir. 2010) (noting that, "[i[f a claim was held to be defaulted by a state court on the basis of an adequate and independent procedural ground, federal habeas review is at an end unless a petitioner can show cause for the default and prejudice attributable thereto"; adding that "[p]rocedure applied in an unprincipled, inconsistent, or freakish manner is inadequate and will not preclude federal habeas review). It is a reasonable inference from Mr. Beasley's opening brief in support of his direct appeal that he was arguing insufficient evidence to support aiding and abetting on *all* crimes of which he had been convicted. *See* Ex. 5 (Op. Br. at 63) ("There was insufficient evidence that Beasley either aided or abetted the crimes committed against [Ms. Doe]."). Furthermore, at a minimum, it was clear from Mr. Beasley's opening brief that he had made an express challenge to the sufficiency of evidence on the torture conviction. *See* Ex. 5 (Op. Br. at 71) ("There was insufficient evidence to support Beasley's torture conviction.").

The Court thus turns to the merits of Mr. Beasley's due process argument. Here, the question is whether it was objectively reasonable for the state appellate court to find that there was sufficient evidence to support Mr. Beasley's convictions. The Court focuses on the kidnapping and torture convictions, as these convictions are the focus of Mr. Beasley's current petition.

On the kidnapping count, it was not objectively unreasonable for the state appellate court to conclude that there was sufficient evidence to support conviction. This is not to say that there was no evidence weighing in Mr. Beasley's favor. For example, as Mr. Beasley points out, it does seem somewhat odd that he would have stopped and picked up two people, including a child, before readying Ms. Doe to be kidnapped by Mr. Booker and the others. Nevertheless, there was also notable evidence to support conviction. For instance, the evidence presented by the prosecution was not limited to a simple failure on the part of Mr. Beasley to help Ms. Doe as she was dragged out of his car by Mr. Booker and the others. Rather, there was evidence that, (1)

8

shortly *before* the incident, Mr. Beasley drove his car, with Ms. Doe in it, by Mr. Booker, (2) at or about the time Mr. Booker's car drove up, Mr. Beasley stopped his car, and (3) shortly *after* the incident, Mr. Beasley was present in the same exact apartment – Mr. Booker's apartment – where Ms. Doe had been taken.[1] Furthermore, Mr. Beasley expressly asked Ms. Doe not to snitch on him. Given these circumstances, it was not objectively unreasonable for the state court to conclude there was sufficient evidence to support Mr. Beasley being a part of the kidnapping plan.

Mr. Beasley protests still that there was insufficient evidence to support the torture conviction. While arguably a closer call, the Court still cannot say that it was objectively unreasonable for the state court to find that there was sufficient evidence to support the conviction. Given that there was evidence to support Mr. Beasley being part of the kidnapping plan, it could also be inferred that he was part of the plan to torture Ms. Doe – *i.e.*, that Mr. Beasley helped kidnap Ms. Doe so that Mr. Booker could punish her for refusing to work for Mr. Booker and to coerce her to work for him. Again, it is notable that, although there is no direct evidence that Mr. Beasley knew Ms. Doe would be tortured by Mr. Booker, he stopped the car which allowed Mr. Booker to kidnap her and was then present at Mr. Booker's apartment where Ms. Doe had been taken after she was kidnapped; he then watched Ms. Doe being beaten. *See Campbell*, 25 Cal.

---

[1] In his petition, Mr. Beasley argues that the state court made unreasonable factual determinations. He points, in particular, to a statement by the court that Mr. Beasley drove Ms. Doe by Mr. Booker on an isolated road, when in fact the record indicates that Mr. Booker was standing near a store. *See* Pet. at 9. On the one hand, the state court seems to have addressed this issue by modifying its decision and eliminating a reference to an "isolated road." On the other hand, although the state court eliminated one reference to an "isolated road," another reference to an "isolated road" still remained in the decision.

Ultimately, even if the state court erred by continuing to reference an "isolated road," the Court is not persuaded that this factual error was material. *See Juan H. v. Allen*, 408 F.3d 1262, 1279 (9th Cir. 2005) ("[A] federal court may . . . grant a writ of habeas corpus if a *material* factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'") (emphasis added); *see also Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004) ("[W]here the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable."). Whether Mr. Beasley drove Ms. Doe by Mr. Booker on an isolated road is not a critical point. Rather, as indicated above, what is significant is that Mr. Beasley drove Ms. Doe by Mr. Booker shortly before the kidnapping and then, after the kidnapping, Mr. Booker was at the same apartment (Mr. Booker's) where Ms. Doe had been taken.

App. 4th at 409 (recognizing that "neither presence at the scene of a crime nor knowledge of, but failure to prevent it, is sufficient to establish aiding and abetting its commission," but "'[a]mong the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense'"); *see also People v. Pettie*, 16 Cal. App. 5th 23, 57 (2017) (stating that "'[t]o be liable for a crime as an abettor, the accused must have instigated or advised the commission of the crime or have been present for the purpose of assisting the crime[;] . . . neither his mere presence at the scene of the crime nor his failure, through fear, to prevent a crime establishes, without more, that an accused was an abettor"'). The main case on which Mr. Beasley relies is distinguishable because, there, the facts did not amount to anything more than, at most, a failure to prevent an offense. *See Pinnell v. Superior Court*, 232 Cal. App. 2d 824, 288 (1965) (noting that "[t]here is not a word of testimony that [defendant] knew that Torres and Hugo were going to kidnap the girl and bring her to his home" and that "[t]here is no testimony that she said or did anything that would make [defendant] aware of her predicament before he actually saw her in his bedroom" but, "even if we assume, arguendo, that he knew the girl was being attacked and did nothing about it, additional implicating facts showing encouragement would be required to hold him as an abettor").

D. <u>Instruction on Human Trafficking</u>

Finally, Mr. Beasley asserts a violation of due process and his right to a jury trial based on an instructional error for the human trafficking charge. California Penal Code § 236.1(b) provides in relevant part that "[a] person who deprives or violates the personal liberty of another with the intent to effect or maintain a violation of Section . . . 266h, 266i, . . . is guilty of human trafficking." Cal. Pen. Code § 236.1(b). Section 266h addresses "pimping," and § 266i "pandering." Mr. Beasley contends that the state trial court gave an improper instruction on human trafficking because it informed the jury as follows:

> To prove that a defendant is guilt of this crime [of human trafficking], the People must prove that:
>
> 1. The defendant either deprived another person of personal liberty or violated that other person's personal liberty; AND

> 2. When the defendant acted, the **other person** intended to maintain a violation of Penal Code 266h or 266i.

CT 516 (emphasis added); *see also* CT 480-81 (instructions on pandering under § 266i and pimping under 266h). Mr. Beasley asserts that the reference to "other person" was legally incorrect; it was the defendant that needed to have the intent to pimp or pander.

To the extent the state argues that this claim has been procedurally defaulted, the Court does not agree. To be sure, the Court is not unsympathetic to the state appellate court's point that, in his opening brief, Mr. Beasley had simply made a perfunctory argument that he was joining his co-defendants' briefs "to the extent applicable." Ex. 5 (Op. Br. at 82) (stating that "Beasley joins in the arguments raised in Booker's and Mitchell's briefs to the extent applicable."); *Mitchell*, 2019 Cal. App. Unpub. LEXIS 3356, at *9 n.4 ("reject[ing] this perfunctory joinder argument because Booker and Mitchell's opening briefs total 150 pages and because defendants raise numerous claims of error from all stages of the proceedings"). That argument provided little to no guidance to the state court. That being said, Mr. Beasley did expressly state in his reply brief (filed with the state court) that he was joining his co-defendants' arguments made on the human trafficking instruction. *See* Ex. 7 (Reply Br. at 6) ("The court's failure to instruct the jury on an essential element of human trafficking requires reversal."). In light of the reply brief, the Court is not inclined to find a procedural default and thus turns to the merits of Mr. Beasley's claim.

In the last reasoned decision, the state appellate court acknowledged that the trial court had made a "typographical error" on the instruction but held that "the error was harmless beyond a reasonable doubt." *Mitchell*, 2019 Cal. App. Unpub. LEXIS 3356, at *15.

> The evidence established defendants had the present intent to force Doe to work as a prostitute: Doe testified Booker was attempting to force her to work as a prostitute and statements Booker and Mitchell made in the apartment corroborated Doe's testimony – Mitchell and others told Doe she needed to "make money for us" and Booker threatened to kill Doe if she did not "make . . . money" for him. Even with the typographical error, a logical reading of the instruction required the jury to find defendants had the intent to obtain forced labor or services from Doe. The jury recognized the instruction as written was illogical; its verdict on the human trafficking charge –based on overwhelming evidence – establishes the error in the jury instruction was of no consequence.
>
> In an effort to establish they lacked the intent to force Doe to work as a prostitute, defendants rely on Doe's testimony that about a week

11

before the incident, Booker wanted Doe to "prostitute for him" but she refused. Defendants claim this testimony shows they "did not attempt to influence Doe's future conduct, but instead sought to exact retribution for Doe's earlier refusal to engage in prostitution." We are not persuaded this evidence would lead a rational juror to conclude defendants lacked the present intent to influence Doe to be a prostitute. Two additional factors persuade us the error in the jury instruction was harmless beyond a reasonable doubt: (1) the court instructed the jury with CALCRIM No. 252 (union of act and intent: general and specific intent together), which informed the jury that human trafficking required a finding of specific intent[2]; and (2) the jury convicted defendants of attempted pandering, which required a finding that defendants possessed the intent to effect or maintain a violation of the pandering statute.

*Id.* at \*15-16.

There is no dispute that there was an instructional error in the instant case as a result of the reference to the "other person" (instead of the defendants) having the intent to pimp or pander. But, under *Brecht v. Abrahamson*, 507 U.S. 619 (1993),

> an instructional error is prejudicial and habeas relief is appropriate only if, after reviewing the record as a whole, [a court] conclude[s] that there was a substantial and injurious effect or influence on the verdict, or if [the court is] "left in grave doubt" as to whether there was such an effect. Grave doubt exists in the "unusual" circumstance where, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error."

*Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010); *see also Davis v. Ayala*, 576 U.S. 257, 267-68 (2015) (noting that "whether a federal constitutional error was harmless depends on the procedural posture of the case"; in a collateral proceeding, as opposed to direct appeal, *Brecht* provides the standard – "relief is proper only if the federal court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict") (internal quotation marks omitted). Here, the Court concludes that the *Brecht* standard has not been met. As the state appellate court noted, the instructional error was obvious; it would make no sense that Ms. Doe intended to pimp or pander. *See, e.g.*, Cal. Pen. Code § 266i(a)(1) (defining pandering as "procur[ing] another person for the purpose of prostitution"); *id.* 266h(a)

---

[2] *See* CT 497 (in instruction on union of act and intent, providing that attempted pandering and human trafficking are crimes that "require a specific intent or mental state"; "[f]or you to find a person guilty of these crimes, that person must not only intentionally commit the prohibited act, but must do so with a specific intent").

12

(providing that "any person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution . . . , or who solicits or receives compensation for soliciting for the person, is guilty of pimping"). Moreover, as the state court noted, the jury convicted Mr. Beasley of attempted pandering. *See id.* § 266i(a)(1) (providing that a person is guilty of pandering if he "[p]rocures another person for the purpose of prostitution"); CT 460 (providing that, for attempted pandering, the state "must prove that: 1. The defendant took a direct but ineffective step toward committing Pandering; AND 2. The defendant intended to commit pandering"). Mr. Beasley thereby had the requisite intent needed for the human trafficking charge as well.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Beasley's petition for habeas relief. The Court **DENIES** Mr. Beasley a certificate of appealability. There is no substantial showing that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000).

**IT IS SO ORDERED**.

Dated: November 23, 2021

_____
EDWARD M. CHEN
United States District Judge

13